1 | **KAZEROUNI LAW GROUP, APC**
2 | Abbas Kazerounian, Esq. (SBN: 249203)
  | ak@kazlg.com
3 | Pamela Prescott, Esq. (SBN: 328243)
  | pamela@kazlg.com
4 | 245 Fischer Ave., Unit D1
5 | Costa Mesa, California 92626
  | Telephone: (800)400-6808
6 | Facsimile: (800) 520-5523
7 |
8 | [Additional Counsel on Signature Page]
9 | *Attorneys for Plaintiffs*
10 |
11 |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| **JOHN SALAS and FRANCISCO XAVIER GONZALEZ, Individually and on Behalf of All Others Similarly Situated,**<br><br>   **Plaintiffs,**<br><br>  v.<br><br>**FORD MOTOR COMPANY,**<br><br>   **Defendant.** | Case No.:<br><br>**CLASS ACTION SEEKING STATEWIDE RELIEF**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br> 1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.*;**<br> 2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. PROF. CODE §§ 17200, *et seq.*;**<br> 3) **THE SONG-BEVERLY CONSUMER WARRANTY ACT ("SBCWA"), CAL. CIV. CODE §§ 1790, *et seq.*;**<br> 4) **FRAUDULENT CONCEALMENT; AND,**<br> 5) **UNJUST ENRICHMENT.**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1. This action concerns a material safety defect in tens of thousands of Ford Mustang Mach-E vehicles manufactured by defendant Ford Motor Company ("Ford" or "Defendant") from the 2022 model year to the present (the "Class Vehicles"), all which contain electronically latched doors, called E-Latch, that upon battery failure or loss of power to the vehicle, require the batteries to be jump started in order for the driver and passenger doors to open from outside the vehicle that presents a significant safety risk (the "Defect").

2. Upon information and belief, Defendant has long known about this Defect and/or at a minimum the inherent risks associated with utilizing electronically latched doors in eclectic vehicles that utilize keyless entry, without providing a hard key or manual way to open the driver and passenger doors in the event of battery failure.

3. This presents a significant safety risk to consumers and the general public, especially if the 12-volt battery loses power, and the driver exits the vehicle to attempt to charge the car, resulting in any passengers (especially children, the elderly and/or disabled) or pets being effectively trapped in the vehicle if they are unable or are not on notice that they must pull the manual lever inside the arm rest all the way down to release the doors.

4. Despite complaints from customers, and numerous instances of small children being locked inside the Class Vehicles, upon information and belief, Defendant has not taken action to prevent or rectify this material safety defect.

5. Plaintiffs John Salas ("Plaintiff Salas") and Francisco Xavier Gonzalez ("Plaintiff Gonzalez") (together, "Plaintiffs") and the Class (as defined below) suffered an economic injury as a result of the Defect and Defendant's concealments about the safety of the Class Vehicles at the time of purchase.

6. Accordingly, Plaintiffs bring this action on behalf of themselves, and other similarly situated individuals against Defendant regarding the Defect.

## JURISDICTION AND VENUE

7.    This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d) because: (a) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (b) the proposed Class consists of more than 100 Class Members; (c) minimal diversity exists; and (d) none of the exceptions under the subsection apply to this action.

8.    This Court has personal jurisdiction over Defendant because Defendant conducts business within this District; and Plaintiff Salas was injured within this District, where the transaction occurred.

9.    Defendant has sufficient minimum contacts in and within this District and has intentionally availed itself of the markets within California through the sale and provision of its goods and services to render the exercise of jurisdiction by this Court reasonable.

10. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred within this judicial District and Defendant conducts substantial business within this judicial District and Plaintiff Salas resides within this District (in the County of Los Angeles).

## PARTIES

11.    Plaintiff Salas is, and at all times mentioned herein was, a natural person, individual citizen and resident of the County of Los Angeles, State of California.

12.    Plaintiff Gonzalez is, and at all times mentioned herein was, a natural person, individual citizen and resident of the County of San Diego, State of California.

13.    Upon information and belief, Defendant is a Delaware corporation, with its principal place of business located Dearborn, Michigan. Plaintiffs are further informed and believe that Defendant conducts business throughout the State of California, including within the County of Los Angeles.

14. Upon information and belief, Defendant owns and manufactures the Ford Mustang Mach-E.

15. Upon information and belief, Defendant designs, manufactures, and markets these Class Vehicles.

## FACTUAL ALLEGATIONS

### A. Background on the Ford Mustang Mach-E and E-Latch System

16. The Ford Mustang Mach-E was first introduced to the market for the 2021 model year.

17. These vehicles are all electric and run on a series of high voltage batteries, which requires the vehicles to be periodically charged through a power outlet.

18. The doors on the Ford Mustang Mach-E contain "electronically latched doors, called E-Latch."[1]

19. The E-Latch system is an "electronically controlled door latch system,"[2] that controls all the vehicle's doors and the front hood of the car (which contains the front luggage compartment). Power is required to operate this system and to access these areas of the car from outside the vehicle.

20. Notably, the Ford Mustang Mach-E does not have door handles or a keyhole on the exterior of the vehicle.

21. Rather, to open the doors from outside the Class Vehicles, there is a flat button located on the exterior of the door panel that, when pressed, will pop open the car door slightly, if the Mustang Mach-E key or a connected smart phone is present, and the car's E-Latch system has power.[3]

_____

[1] https://www.ford.com/support/how-tos/keys-and-locks/door-locks-and-alarms/how-do-i-use-ford-mustang-mach-e-elatch-doors/ (last visited Jan. 23, 2025).

[2] https://www.sherwoodford.ca/blog/what-is-the-ford-e-latch-and-how-does-it-work/amp/ (last visited Jan. 24, 2025).

[3] *Id*. (explaining how to open E-Latch doors: "With your key fob on hand, or while using Phone As A Key*, the button will illuminate as you approach your vehicle. Simply push the button to activate E-Latch. Doing so will cause the door

22.    Below is an example from Defendant's website[4] showing the E-Latch system:

23.    This E-Latch system is marketed to consumers as "an easier way to access your vehicle."[5]

24.    However, a significant drawback of this electronic latching system in the Class Vehicles (that is <u>not</u> adequately disclosed to consumers) is that "**[i]f you lose**

---

to unlatch and pop open slightly. A convenient latch just below the button is there to assist with opening the front door. Simply pull the handle to open it all the way. The Mustang Mach-E also knows when the driver leaves – automatically locking all the doors. To open the rear doors, press the button on the door. The door will unlatch and open slightly. Then, simply pull the door open the rest of the way using the grab pad on the inside of the door.").

[4] https://www.ford.com/support/how-tos/keys-and-locks/door-locks-and-alarms/how-do-i-use-ford-mustang-mach-e-elatch-doors/ (minute 0:35 of video) (last visited Jan. 31, 2025).

[5] https://www.sherwoodford.ca/blog/what-is-the-ford-e-latch-and-how-does-it-work/amp/ (last visited Jan. 24, 2025).

**power, you will need to attach jumper cables to your vehicle and charge the battery in order to access your vehicle**."[6]

25.    This is because the Ford Mustang Mach-E contains a 12-volt battery under the front hood of the vehicle underneath the front luggage compartment.

26.    This "12 volt battery controls the switches and contacts that engage the high voltage battery."[7]

27.    If the vehicle loses power, for example in the case of the battery running out or failing, the driver is required to jump start the car in order to be able access and apply power to the 12-volt battery (contained within the hood of the car) and to use the E-Latch system to open the doors.[8]

28.    Indeed, to access the front luggage compartment (where the battery is located) in the case of battery failure, drivers are required to follow a series of complicated and time-consuming steps that an average driver, without superior knowledge of vehicles and the proper equipment, may not be able to successfully complete.

29.    First, the driver must somehow have access to "an external power supply such as a 12 volt jump box."[9]

30.    Typically, this type of equipment, if available, is stored *within* the vehicle. So even if a driver has an external power supply, it is likely inaccessible if the car loses power, and the driver is locked out of the vehicle.

31.    Then, if the driver has the necessary equipment located outside the vehicle, the driver must "[r]emove the cover at the front of [the] vehicle below the headlight

---

[6] *Id.* (emphasis added).
[7] *See* https://www.ford.com/support/vehicle/mustang-mach-e/2023/owner-manuals/.
[8] https://www.ford.ca/support/how-tos/more-vehicle-topics/storage-and-trunk/how-do-i-open-the-front-luggage-compartment-on-my-mustang-mach-e-when-i-have-no-vehicle-power/ ("If your Mustang Mach-E has no power, you will be unable to open the doors or front hood to access the internal compartments using your Phone As A Key or key fob.") (last visited Jan. 24, 2025).
[9] *See id.; see also,* Mustang Mach-e Owners Manuals from 2022, 2024-2025.

[and] [p]ress firmly on the top right of the cover's edge, then pull the raised section on the bottom left toward [themselves]."[10]

32.    Next, the driver has to pull out two wires and connect them to the external power supply (making sure to "to match the red positive cable (A) to the red positive terminal and the black negative cable (B) to the black negative terminal").[11]

33.    This will result in the latches on the front luggage compartment releasing.

34.    But it does not stop there–assuming the driver is able to successfully jump the car to open the front luggage compartment, the driver then has to jump the actual battery in order to be able to open the doors and gain access to the inside of the vehicle.

35.    This tedious multi-step process is not only not feasible for the average driver and requires equipment not provided with the purchase of the Ford Mustang Mach-E, but it presents **significant safety concerns for drivers and passengers** (particularly, children, the elderly and disabled, and even pets) who run the risk of getting locked inside the vehicle.

36.    Even though there is a lever in the arm rest of the doors, if the passenger is unable or does not know how to pull that lever, there is no way to enter the vehicle in the instance of a battery failure other than jumpstarting the vehicle, not once, *but twice*.

### B. The Defect on the Class Vehicles Presents a Significant Safety Concern

37.    The Class Vehicles suffer from a Defect that presents a significant safety concern to drivers and passengers that is not properly disclosed at the time of purchase.

38.    The doors of the Class Vehicles are <u>intentionally</u> "designed to open electrically at the touch of a button, but unlike most cars with electronic door

---

[10] *Id.*
[11] *Id.*

handles, the Mustang Mach-E **does not have a fail-safe physical key that can be used should the battery fail; there's no hidden physical slot to insert one**."[12]

39.    Plaintiffs are further informed and believe that the Class Vehicles, as defined herein, each require the car to be jumped in the event of a battery failure (with after-market equipment) and do not provide an alternative non-electric way to open the vehicle doors. Thus, all Class Vehicles suffer from this same Defect. Upon information and belief, Defendant knows of the Defect and intentionally failed to provide a non-electric way to open the vehicle doors in the event of a battery failure.

40.    Other automobile manufactures of electric vehicles, like Volkswagen and Toyota, include a hard key located within the key fob that allows the car to be manually opened in the event of a battery failure or dead key fob. Defendant provides no such safety measure.

41.    This Defect presents a significant safety risk to both drivers and passengers of these Class Vehicles, including because passengers (especially children, the elderly and the disabled) can easily become locked in the car in the event of a power failure.

42.    Just recently, an owner of a Ford Mustang Mach-E posted concerns over this very defect on the internet, including reddit, when his 9-month-old child became locked in the vehicle when the battery died.[13]

43.    The individual posted the following online concerning the incident:

> My wife parked the car on the street with 25% battery and was planning on plugging it into a public charger. When she got out of the car to go grab our infant son, the car became completely disabled. Nothing worked! The car locked and neither the key or either of our phones could unlock it. AAA and Ford roadside assistance both came to

---

[12] https://www.roadandtrack.com/news/a63362542/ford-mustang-mach-e-owner-says-infant-son-wound-up-trapped-when-doors-would-not-open/ (last visited Jan. 24, 2025) (emphasis added).

[13] *See, e.g.,*
https://www.reddit.com/r/MachE/comments/1hss7c6/mach_e_completely_disabled_with_child_trapped/ (last visited Jan. 24, 2025).

> try to unlock it, but I ultimately had to break the window
> to get our son out of the car. Once inside, nothing worked
> either. The start button did nothing.[14]

44.    Another person responded to that post stating, "It's a colossal design flaw that the Mach-E does not having mechanical door handles and no physical key hole for situations like this. I sincerely hope Ford changes this egregious oversight . . ."

45.    Another user stated: "What is funny about it, they did take the time to add the mechanical release from the inside (just pull further on the handle) which some other manufacturers neglect. Obviously exiting the car should not be an issue. In this case, the occupant themselves was unable to pull the handle. I guess similar situations could happen with pets."

46.    Unfortunately, this is not the first instance where the Defect has left children stuck inside a Ford Mustang Mach-E.

47.    In July of 2024, another car owner posted a troubling incident involving his 1-and 3-year-old children who became trapped inside the vehicle when the battery died.

48.    That owner posted the following online:

> I had a similar experience on June 8 but much more
> serious. My wife was at Walmart with our two kids and as
> she got out the car closing her door to head to the back
> door to get our kids the car somehow died. As you noted,
> nothing worked to unlock the door. Mind you we live in
> NC, and the outside temperature was about 95 degrees. I
> tried to use the ford pass to remotely unlock the doors, roll
> down the windows, remote start the car but nothing
> worked. At this time, panic and terror started to set in as
> my wife starts to see our 1- and 3-year-old screaming in
> terror. We had no choice but to call the fire department.
> Ultimately, the fire department had to break the front
> passenger window to get our kids out. We were told that

---

[14] *Id.*

the inside temp of the car was around 120 degrees, and our
kids would have been dead in about 3 more minutes.[15]

**C. Defendant Has Failed to Address the Defect**

49.     Upon information and belief, Defendant knew (or at the very least should
have known) of the Defect in the Class Vehicles yet has failed to disclose the Defect
to consumers or even properly inform consumers how to open the vehicle in the
event of a battery failure.

50.     Plaintiffs are further informed and believe that Defendant concealed and/or
otherwise failed to disclose, reveal, or provide notice to customers, including
Plaintiffs and Class Members, in Defendant's advertising, labeling or otherwise that
the Class Vehicles were, and still are, defective and are worth less than they should
be, if they were not defective.

51.     This is especially true because the only way to enter the vehicle in the event
of a battery failure is to buy an external power supply, which is not provided with
the purchase of the Class Vehicles.

52.     Rather than address the Defect, Defendant has failed to provide any remedy
to Class Members.

**D. Factual Allegations Pertaining to the Named Plaintiffs**

**i.    Facts Allegations Relating to Plaintiff Salas**

53.     On or about July 27, 2022, Plaintiff Salas purchased a brand new 2022 Ford
Mustang Mach-E (ending in VIN Number 1384) from Ford of Upland, located at
1300 East 20th Street, Upland, CA 91784.

54.     Unbeknownst to Plaintiff Salas at the time of the purchase of his vehicle, he
suffered an economic injury due to the Defect (that was concealed at the time of
purchase of his Ford Mustang Mach-E).

55.     As would a typical consumer, Plaintiff Salas reasonably believed upon
purchase that his Ford Mustang Mach-E (including the accompanying keyless entry

---

[15] https://www.macheforum.com/site/threads/mach-e-dead-in-garage-next-
step.37221/#post-822360.

system and E-Latch system) would be fit for the ordinary purpose for which it was used, i.e., to be able to access the vehicle safely, even in the event of a battery failure.

56.    However, what Plaintiff Salas did not know at the time of purchase, was that his Ford Mustang Mach-E contained a material safety Defect, which meant that in the event of a battery failure, the only way to enter his vehicle would be to jump start the battery, twice, using an after market power source that Plaintiff Salas would be required to purchase on top of the purchase of the car.

### ii.    Facts Allegations Relating to Plaintiff Gonzalez

57.    On or about April 23, 2024, Plaintiff Gonzalez purchased a brand new 2023 Ford Mustang Mach-E (ending in VIN Number 5243) from Aaron Mehandroo LLC, located at 1717 Auto Park Way S, Escondido, CA 92029.

58.    Unbeknownst to Plaintiff Gonzalez at the time of the purchase of his vehicle, he suffered an economic injury due to the Defect (that was concealed at the time of purchase of his Ford Mustang Mach-E).

59.    As would a typical consumer, Plaintiff Gonzalez reasonably believed upon purchase that his Ford Mustang Mach-E (including the accompanying keyless entry system and E-Latch system) would be fit for the ordinary purpose for which it was used, i.e., to be able to access the vehicle safely, even in the event of a battery failure.

60.    However, what Plaintiff Gonzalez did not know at the time of purchase, was that his Ford Mustang Mach-E contained a material safety Defect, which meant that in the event of a battery failure, the only way to enter his vehicle would be to jump start the battery, twice, using an after market power source that Plaintiff Salas would be required to purchase on top of the purchase of the car.

### E. Defendant's Misconduct Injured Plaintiffs and the Class

61.The Defect on Plaintiffs' Ford Mustang Mach-Es and the other Class Vehicles poses safety risks and other inconveniences as described above and

otherwise impairs the utility and value of the vehicle.

62. Consequently, if ordinary reasonable consumers had known of the Defect, they naturally would consider it an important and material fact in deciding whether to purchase or lease a Class Vehicle and/or how much to pay for it.

63. As a long-time automotive manufacturer, which has likely conducted numerous customer surveys and fielded thousands of complaints and warranty claims from consumers, Defendant was aware that ordinary reasonable consumers generally expect defect-free automobiles when they make a substantial investment to purchase or lease.

64. Defendant could and should have informed Plaintiffs and the Class of the Defect, rather than concealing it and/or failing to warn consumers about the risk associated with a battery failure, the ability to access the Class Vehicles, and the requirement to purchase an external power source. Such information could have been conspicuously provided through advertising and marketing campaigns; on-vehicle labeling, stickers, and placards; brochures; pamphlets; dealership personnel and agents; the internet and social media outreach; and through full and complete disclosure through recalls.

65. Such information could easily have been made known to Plaintiffs and the Class by Defendant before Plaintiffs and the Class purchased their Class Vehicles, such as through their interactions with Defendant's dealership personnel and agents; all the various marketing and advertising Defendant undertake (including through television, internet, social media, sporting events, and other media); by looking at their vehicles, upon which Defendant could have affixed a warning about the Defect which Plaintiff would have necessarily seen by looking and sitting in the vehicle itself; and/or through the mail or email, as Defendant could have sent out—and indeed, regularly do send out—for the many recalls Defendant routinely issues each year.

66. Despite having knowledge of the Defect as detailed above—knowledge far

superior to that of ordinary consumers such as Plaintiffs and the Class—Defendant remained silent about the Defect for the Class Vehicles, and even worse, continues to sell the Class Vehicles with a dangerous Defect, when Defendant should have issued a recall.

67. As a result, the public—including prospective purchasers and lessors like Plaintiffs and the Class—were unaware of the Defect at the time they purchased their Class Vehicles.

68. Indeed, Plaintiffs and the Class bought Class Vehicles in reliance on the fact that the vehicles were fit for their ordinary purposes and did not contain a dangerous Defect.

69. Defendant intended to mislead, and in fact misled, ordinary reasonable consumers—including Plaintiffs and the Class—through its omissions, active concealment and/or failure to warn of the Defect.

70. Defendant did so with the intent to generate and increase sales of the Class Vehicles, thereby increasing its share of the automobile market and avoiding the expense of installing manual key locking and unlocking systems in the event of a battery failure.

71. The Class Vehicles have a diminished value compared to the price they commanded when purchased or leased by Plaintiffs and the Class because disclosure of the Defect would influence the purchasing and leasing decisions of ordinary reasonable consumers, including their valuation and willingness to pay for the Class Vehicles.

72. If an individual is required to break a window to access the inside of the Class Vehicles or free a trapped passenger in the event of a power failure, costs for repair can cost thousands of dollars.

73. Plaintiff and the Class lost money as a result of Defendant's conduct because they did not receive what they reasonably believed they were paying for due to Defendant's omission, active concealment, and/or failure to warn of the dangerous

Defect, while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiffs and the Class what it reasonably expected to receive in exchange for the money it paid.

74. As a result of Defendant's misconduct, Plaintiffs and the Class suffered economic injury at the time of purchasing or leasing their Class Vehicles.

75. Particularly, either they purchased or leased vehicles that they otherwise would not have, or they paid more to own or lease their Class Vehicles than they would have paid had the Defect been timely disclosed.

76. Because the existence of the Defect in the Class Vehicles would have been patently material to a reasonable consumer, Plaintiffs and the Class would not have purchased or leased the Class Vehicles and/or would not have paid as much for them were the Defect not concealed.

77. Defendant's concealment caused Plaintiffs and the Class to pay more for the Class Vehicles than they otherwise would have, or to purchase or lease the Class Vehicles when they otherwise would have chosen not to.

78. Stated differently, absent Defendant's misconduct, Plaintiffs and the Class would only have been willing to pay less for the Class Vehicles, if they were willing to purchase or lease them at all.

79. By concealing and not disclosing the Defect (which is dangerous to drivers and their passengers), Defendant distorted the true value of every Class Vehicle such that every Plaintiff and Class member received a vehicle of different and substantially lesser value—one with a higher effective cost—than they reasonably believed they were receiving.

80. Indeed, Plaintiffs and the Class surrendered more and acquired less in their transactions than they would have if Defendant had disclosed the Defect. Accordingly, Plaintiffs and the Class did not realize the benefit of the bargain in purchasing and leasing the Class Vehicles, and their expectations as ordinary reasonable consumers were not met.

81. In effect, Plaintiffs and the Class paid substantially more than the market value represented by the price bargained for, as Plaintiffs and the Class bargained on a particular market value for their respective Class Vehicles. Because the Defendant's misconduct resulted in Plaintiff receiving less than they bargained for, Plaintiffs and the Class effectively paid a higher price than that reflected in the market price.

82. The cost of every Class Vehicle would have been lower absent Defendant's concealment of the Defect and its related misconduct, and Plaintiffs and the Class detrimentally altered their positions and suffered damages in an amount no less than the difference in value between what Plaintiffs and the Class reasonably believed they were paying for and the value of the Class Vehicle they actually received.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. The Statute of Limitations Did Not Begin to Run Because Class Members Did Not Discover and Could Not Discover Their Claims Based on the Defect

83. Plaintiffs and the Class had no knowledge of Defendant's misconduct, including the omissions and concealment alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein.

84. Plaintiffs and the Class did not discover, and could not discover, through the exercise of reasonable diligence, the fact that Defendant had manufactured and/or sold the Class Vehicles with the concealed Defect.

85. The limited, though probative, disclosures and revelations alleged in this Complaint required extensive investigation by counsel who suspected, and then became aware of, the Defect.

86. Ordinary consumers do not have detailed knowledge of vehicle systems and components, although they are justified in expecting their vehicles to be free of substantial safety defects like the Defect at issue in this action.

87. Defendant maintains exclusive control over its proprietary design materials and other technical information that would have revealed the existence and nature

of the Defect and the ways in which it manifests when operating a Class Vehicle. Plaintiffs and the Class had no access to those materials or to any substitute that ordinary diligence would have revealed and, as a result, they could not reasonably have been expected to discover the Defect.

88. No information in the public domain at the time of their purchases or leases by Plaintiffs and the Class sufficed to reveal Defendant's misconduct earlier, including its omissions and concealment of the Defect, or the Defect itself.

89. Accordingly, the statute of limitations did not begin to run because Plaintiffs and the Class did not discover and could not discover their claims, or, in the alternative, because fraudulent concealment tolled the statute of limitations.

90. Defendant concealed the Defect and has continued to do so up through the date this action was filed. It did and does so to create the false impression in the minds of Plaintiffs and the Class that the Class Vehicles were merchantable and that their component parts, including the E-Latch technology, were able to perform their intended function safely and reliably.

91. Plaintiffs and the Class were justified in not bringing the claims earlier based on Defendant's failure to inform Plaintiffs and the Class of the existence, nature, extent, and scope of the Defect or its manifestations in Class Vehicles.

92. For the foregoing reasons, the claims asserted in this action accrued much later than the time Plaintiffs and the Class purchased and leased their Class Vehicles, and this action is timely.

**B. Fraudulent Concealment Tolled the Statute of Limitations.**

93. In the alternative, and based upon the same facts alleged above, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted here.

94. Plaintiffs and members of the Class were unaware of the Defect and Defendant's misconduct when they purchased or leased their Class Vehicles.

95. Defendant's affirmative acts and omissions alleged herein were wrongfully

concealed and carried out in a manner that precluded detection of both the acts and omissions themselves, and the existence, nature, extent, and scope of the Defect and its manifestations in Class Vehicles.

96. By its very nature, Defendant's misconduct was inherently self-concealing. Vehicle systems and components are subject to regulations and other laws governing their safety and merchantability.

97. Plaintiff and members of the Class reasonably expected the Class Vehicles, including their systems and components, to meet or exceeded such standards.

98. Accordingly, a reasonable person under the circumstances would have no cause to investigate the legitimacy of Defendant's conduct before or after purchasing or leasing a Class Vehicle and would have faced extreme difficulty in discerning the Defect that they had no reason to suspect in the first place.

99. Because the misconduct was both self-concealing and affirmatively concealed by Defendant, Plaintiff and members of the Class had no knowledge of the misconduct, or of any facts or information that would have caused a reasonably diligent person to investigate whether misconduct existed until counsel revealed the Defect to Plaintiff based upon extensive and also recent investigation.

100.     For these reasons, the statute of limitations as to Plaintiffs' and the Class's claims did not begin to run and has been tolled with respect to the claims that Plaintiff allege in this Complaint and any others that might relate to it.

101.     Further, the statute of limitations was tolled as a result of Defendant's purposeful nondisclosure and other misconduct alleged herein, under the fraudulent concealment doctrine.

## CLASS ACTION ALLEGATIONS

102.     Plaintiffs seek to certify a California Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as:

> All persons within the State of California who (a) purchased and still own, and/or (b) lease or leased, at least

one new Class Vehicle for the 2022 through 2025 model years.

103.    Excluded from the Class is Defendant and its board members, executive-level officers, attorneys, and immediate family members of any such persons; the Court, the Court's immediate family, and the Court staff; and any person who asserts a personal injury or wrongful death claim caused by the Defect.

104.    **Numerosity**. Upon information and belief, Defendant sold over 160,000 Class Vehicles throughout the United States from 2020 to the present.[16] Therefore, upon information and belief, the Class is comprised of a sufficiently large group of individuals—believed to be in the hundreds of thousands, if not more—and thus is so large that it is impracticable to join all members of the Class before the Court as individual plaintiffs.

105.    **Typicality.** Plaintiffs are each a member of the Class in which they seek to represent and bring claims typical of those Classes (which are typical of one another as well) because Plaintiffs—like all other Class Members—purchased or leased a Class Vehicle designed, manufactured, marketed, distributed, sold, and/or leased by Defendant.

106.    Plaintiffs and each member of the Class received less than the full value of the Class Vehicles due to the Defect and Defendant's uniform omissions and concealment of the Defect. Class members, as ordinary reasonable consumers like Plaintiffs, would not have purchased the Class Vehicles or paid as much to own or lease them had Defendant not concealed the Defect, which was unknown to Plaintiffs and the Class alike.

107.    Thus, Plaintiffs and the Class have all been damaged by Defendant's pattern of misconduct—which is common to all Class members—and have suffered the same economic harms. In other words, Defendant's misconduct is common to all Class Members and constitutes a shared factual nexus of injury to the Class.

---

[16] https://www.goodcarbadcar.net/ford-mustang-mach-e-sales-figures/ (last visited Jan. 27, 2025).

108.    Plaintiffs and the Class were exposed to the same or substantially similar material omissions regarding the E-Latch system in the Class Vehicles; as ordinary consumers, all shared reasonable and foreseeable expectations regarding the safety and merchantability of the Class Vehicles; and all were harmed by the same omissions—namely, Defendant's concealment of the Defect.

109.    Plaintiffs and each Class Member suffered economic damages that are calculable on a class-wide basis. The claims all arise from a single course of conduct and each Class member would therefore individually bring substantively identical legal and factual arguments to establish Defendant's liability for its misconduct.

110.    There are no defenses available that are unique to the Plaintiffs.

111.    **Commonality & Predominance.** The Class is united by a shared of interest in obtaining appropriate remedies, including injunctive relief, repair or replacement of the defective vehicles, restitution, damages, and other available relief designed to redress Defendant's wrongful conduct.

112.    This action involves questions of law and fact that are common to the Class that are susceptible to common answers and that predominate over any individual questions specific to any Class Member. These include, but are not limited to the following:

a.  Whether the Class Vehicles contain the Defect;

b.  Whether the Defect constitutes a material fact to an ordinary reasonable consumer;

c.  Whether an ordinary reasonable consumer would have purchased or leased a Class Vehicle had the Defect been disclosed;

d.  Whether an ordinary reasonable consumer would have paid less money to purchase or lease a Class Vehicle had they known of the Defect—and if so, how much less they would have paid;

e.  Whether the Class Vehicles commanded a premium relative to their actual value in light of the undisclosed Defect;

f.  Whether and when Defendant had actual or constructive knowledge of the Defect;

g.  Whether Defendant had and has a duty to disclose the Defect to the Class and whether it fraudulently concealed the Defect;

h.  Whether and to what extent Defendant is liable for damages, restitution, diminution in value, out-of-pocket expenses, and other losses incurred by the Class as a result of the Defect;

i.  Whether Defendant should be declared legally and financially responsible for notifying the Class of the Defect and of their right to whatever relief to which the Class is entitled; and

j.  Whether and to what extent other equitable or injunctive relief is appropriate to remedy the harms caused by Defendant's misconduct and to prevent further such harms.

113. These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class Member's claims.

114. The factual and legal issues identified above:

a.  Remain common to the Class;

b.  Arise from a common course of conduct and systemic policy decisions made by Defendant;

c.  Predominate in number and importance over questions that may not be common to the class; and

d.  Preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

115. **Adequacy of Representation.** Plaintiffs are each an adequate Class representative because Plaintiffs' interests do not conflict with the interests of the Class Members. Plaintiffs commit to protecting the interests of the Class without

exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the Class generally.

116. Plaintiffs have retained attorneys with exceptional experience in complex litigation, including extensive class action experience and experience in handling consumer protection cases and product liability cases, including automobile defect claims.

117. The firms and lead counsel for the firms retained by Plaintiffs also have substantial trial experience, individually and collectively. Plaintiffs and their attorneys will responsibly, ethically, and vigorously advocate on behalf of the Class, and Plaintiffs' counsel have ample resources to do so.

118. **Superiority.** This class action is superior to the other means available to the Class to obtain relief because:

a. The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation of the claims described here against Defendant so that making the Class whole in the absence of a class action is unlikely and impracticable;

b. Class Members accordingly have relatively less interest in individually controlling the prosecution of separate actions (if they even are aware of the issue); and it cannot be said that the interests of individuals pursuing individual cases in conducting separate lawsuits is so strong as to call for denial of a class action;

c. Denial of class treatment runs the risk of establishing incompatible standards of conduct for Defendant, discouraging the prosecution of meritorious but relatively small claims, and it may result in adjudications which would be dispositive of the interests of other Class Members who are not parties to the adjudication, or otherwise substantially impair the ability of Class Members (and Defendant) to protect their rights and interests;

119.     Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential claims in a single forum and proceeding.

120.     Likewise, the judicial system has no interest in burdening a number of courts when the claims of a cohesive class can be fairly and efficiently concentrated and managed by this Court.

121.     The claims are indeed manageable because they are governed by one state's law.

122.     Further, the class procedure is designed to result in the fair, uniform, and efficient adjudication of the sorts of claims presented by this Complaint.

123.     Defendant's misconduct impacts all Class Members, whose losses are capable of calculation on a Class-wide basis.

124.     **Injunctive and Declaratory Relief.** Defendant has acted or refused to act on grounds generally applicable to the Class, making the award of equitable relief and/or restitution appropriate to the Class in its entirety.

125.     Certification of particular issues would move the litigation forward efficiently and would save money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

<u>**FIRST CAUSE OF ACTION**</u>

**Violations of the Consumer Legal Remedies Act ("CLRA")**

**(Cal. Civ. Code §§ 1750, *et seq.*)**

**(On Behalf of Plaintiffs and the California Class)**

126.     Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

127.     Plaintiffs bring this cause of action against Defendant on behalf of themselves and the California for violation of the CLRA.

128.     Defendant is a "person" under California Civil Code § 1761(c).

129.    Plaintiffs are each a "person" under California Civil Code § 1761(c).

130.    Plaintiffs and the Class are "consumers" under California Civil Code § 1761(d) because they purchased Class Vehicles primarily for personal, family, or household use.

131.     The purchase of Class Vehicles by Plaintiffs and the Class, constitute "transactions" within the meaning of California Civil Code § 1761(e).

132.     The Class Vehicles are "goods" within the meaning of California Civil Code § 1761(a).

133.    Defendant's violations of the CLRA occurred repeatedly in Defendant's trade or practice—including the design, manufacture, distribution, marketing, sale, and lease of the Class Vehicles.

134.    Defendant violated California Civil Code § 1770(a)(5) by representing that the Class Vehicles had a characteristic that they did not actually have—i.e., knowingly omitting the fact that Class Vehicles included a Defect, making Class Vehicles, and their e-Latch systems, unfit for the ordinary purposes for which they were used.

135.    Defendant violated California Civil Code § 1770(a)(7) by representing that the Class Vehicles were of a particular quality, grade, or standard when, in fact, they were not of that quality, grade, or standard.

136.    Defendant violated California Civil Code § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

137.    Defendant had a duty to disclose the Defect because:

   a.  The exclusive and reliable operation and functionality of the Class Vehicles' E-Latch is central to the secure and reliable function of the Class Vehicles as a whole, including ensuring drivers and passengers can enter and exit the vehicles in the event of a power failure;

b. Defendant was in a superior position to know that the Defect existed as the designers, manufacturers, assemblers, distributors, marketers, and warrantors of the Class Vehicles, and Defendant remains in that position as to the vast majority of unwitting Class Members;

c. Plaintiffs and the Class were not involved in the design or manufacture of the Class Vehicles, and as such could not be expected to learn or know about the existence and cause of the Defect;

d. Defendant knew that Plaintiffs and the Class lacked access to the design and manufacturing materials necessary to understand the existence and cause of the Defect; and,

e. Defendant knew that ordinary reasonable consumers would expect the Class Vehicles to be free of significant defects central to the security and safety of the vehicles such that the Defect would constitute a material fact in any purchasing or leasing decision, i.e., it would have influenced any and every reasonable consumer's purchasing or leasing decision, including whether and how much to pay to purchase or lease a vehicle.

138. Ordinary reasonable consumers have no general appreciation of the components and subcomponents of vehicles and vehicle systems but would expect the vehicle to be well-designed and to offer a reasonable level of safety and reliability when used as intended.

139. Every ordinary and objectively reasonable consumer would expect the Class Vehicles to be free of significant defects central to the safety of the vehicles and thus implicitly and necessarily would hold such an expectation as to the E-Latch system and its component parts.

140. The reliable and proper functioning of the E-Latch system and vehicle doors are a material component of a vehicle transaction.

141.    Accordingly, every ordinary and objectively reasonable consumer would have considered the Defect to be an important and material fact that would have substantially influenced their decision of whether to purchase or lease a Class Vehicle and how much to pay, if anything.

142.    Every ordinary and objectively reasonable consumer acting reasonably under the circumstances would have been deceived by Defendant's misconduct, including its concealment of the Defect.

143.    As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiffs and every member of the Class:

    a.  Purchased or leased a Class Vehicle they otherwise would not have purchased or leased or paid more than they otherwise would have;

    b.  Thereby suffered an ascertainable loss of money, property, and value of the Class Vehicles; and

    c.  Suffered actual damages and other economic harms because of the latent Defect, including the losses described elsewhere in this Complaint and the requirement that they purchase an after-market power source to jump start the batteries in the event of a power failure.

144.    Due to Defendant's original and continuing misconduct alleged throughout this Complaint, Plaintiffs and the Class are entitled, pursuant to California Civil Code § 1780, to injunctive, declaratory, and equitable relief, including an order, judgment, and other judicial action, decision, or proclamation:

    a.  Declaring that the Class Vehicles' E-Latch systems as defective;

    b.  Declaring that Defendant's conduct violated the CLRA;

    c.  Declaring that Plaintiffs and the Class are entitled to reimbursement or restitution for money spent on the Class Vehicles; and

    d.  Enjoining Defendant from continuing to violate the CLRA.

145.    On February 27, 2025, Plaintiffs, through counsel, sent a notice of violations and demand for corrective action to Defendant pursuant to Cal. Civ. Code

§ 1782(a) (the "CLRA Demand"), via certified mail, return receipt requested.

146.    Plaintiffs and the Class are entitled to, and seek, injunctive relief prohibiting such conduct in the future.

147.    Attached hereto as **Exhibits A-B** are the venue affidavits of Plaintiffs pursuant to California Civil Code § 1780(d).

148.    Pursuant to California Civil Code § 1782(d), Plaintiffs reserve the right to amend the Complaint to seek damages and attorneys' fees as to this cause of action should Defendant, within thirty (30) days of receiving the CLRA Demand, fail to provide Plaintiffs with an appropriate correction, repair, replacement, or other remedy, and/or offer no relief or cure for the Class Members.

## SECOND CAUSE OF ACTION

### Violations of California's Unfair Competition Law ("UCL"),

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (On Behalf of Plaintiffs and the California Class)

149.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

150.    Plaintiffs bring this cause of action against Defendant on behalf of themselves and the California Class for violation of the UCL.

151.    The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice.

152.    The UCL imposes strict liability. Plaintiffs need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—only that such practices occurred.

153.    Defendant's acts, omissions, practices, and non-disclosures alleged throughout this Complaint constitute business acts and practices.

154.    Defendant's acts, omissions, practices and non-disclosures alleged throughout this Complaint constitute unlawful, unfair, and fraudulent business acts

and practices because it has the capacity to deceive reasonable consumers, including Plaintiffs and the Class, as to the benefits and effectiveness of the Class Vehicles and, thereby, the Class Vehicles' E-Latch.

155.    Defendant had a duty to disclose the Defect based on its superior knowledge as the designers, manufacturers, sellers, marketers, and/or warrantors of the Class Vehicles, and as further alleged in this Complaint.

156.    Defendant violated Cal. Bus. & Prof. Code § 17200 by engaging in "unfair competition," including through "unlawful, unfair, or fraudulent business acts or practices" and "unfair, deceptive, untrue, or misleading advertising." Defendant's violations include:

a.    Advertising, marketing, distributing, selling, and leasing the Class Vehicles when Defendant knew those vehicles were defective and unable to reliably and safely perform their intended use;

b.    Failing to disclose the true nature, scope, and extent of the Defect; and,

c.    Concealing material facts regarding the Class Vehicles—i.e., that when the battery dies the car's batteries must be jumped in order to open the car doors and utilize the E-Latch system, and that no external mechanical mechanism is available to open the cars.

157.    **Unlawful Prong:** Defendant's misconduct is "unlawful" under the UCL because it violates:

a.    Common law prohibition against fraudulent concealment;

b.    The CLRA;

c.    The Song-Beverly Consumer Warranty Act ("SBCWA"); and,

d.    The Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), 49 U.S.C. 30101, *et seq.*, by failing to timely inform NHTSA of the nature, extent, and scope of the Defect and by allowing the Class Vehicles to continue to be

sold, leased, and used in a dangerous and defective condition.

158.     **Unfair Prong**: Defendant's acts and omissions constitute "unfair" business practices under the UCL because:

    a.   Defendant engaged in a misleading and deceptive practice of knowingly or intentionally selling the Class Vehicles, all of which have the Defect;

    b.   Defendant's acts and omissions offend an established public policy of transparency in the sale or lease of consumer vehicles, and it engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers; and

    c.   The harm to Plaintiffs and the Class grossly outweighs the utility of Defendant's practices.

159.     **Fraudulent Prong:** Defendant's deceptive practices constitute fraudulent business acts or practices because Defendant deceived Plaintiffs and the Class into purchasing a Class Vehicle that, unbeknownst to Plaintiffs and the Class, were dangerously defective and unsuitable for their intended purpose.

160.     Defendant has engaged in deceptive, misleading, unfair, unconscionable, and fraudulent acts and practices that have caused actual damages to Plaintiffs and the members of the Class, as described herein, and as noted below:

    a.   *Who:* Defendant (i.e., the designer, manufacturer, and marketer of the Class Vehicles).

    b.   *What:* Plaintiffs and the Class purchased a Class Vehicle containing a Defect**.**

    c.   *Where:* Through Ford and its authorized Ford dealerships.

    d.   *How:* Defendant failed to disclose to Plaintiffs and the Class at the time of purchase of the Class Vehicles that: (1) the Defect presents a significant safety risk to drivers and passengers; (2) after-market equipment is required to access the inside of the Class Vehicles in the

event of a power / battery failure; and (3) there is no manual way to open the doors to the Class Vehicles in case of an emergency or power / battery failure. Plaintiffs and the Class reasonably believed and relied upon the fact that the Class Vehicles did not contain a dangerous Defect and that they were fit for their ordinary use and intended purpose.

161.    Defendant's concealment of the Defect and its false, deceptive, misleading, and confusing omissions would be material to any ordinary, average, and objectively reasonable consumer's decision whether to buy or lease a Class Vehicle, given that the Defect is central to the vehicles' functionality and the ability to access the vehicles, and it pertains to the safety of the Class Vehicles.

162.    No reasonable consumer, including Plaintiffs, would have purchased or leased a Class Vehicle for the price they did but for Defendant's acts, practices, omissions, and active concealment of the Defect.

163.    Any ordinary, average, objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices, including the omissions described herein.

164.    As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiffs and every member of the Class:

    a. Purchased or leased a vehicle they otherwise would not have purchased or leased or paid more than they otherwise would have;

    b. Thereby suffered an ascertainable loss of money, property, and value of the Class Vehicles; and

    c. Suffered actual damages and other economic harms because of the latent Defect, including the losses described in this Complaint.

165.    Due to Defendant's original and continuing misconduct alleged throughout this Complaint, Plaintiffs and the Class are entitled to injunctive, declaratory, and equitable relief, including an order, judgment, and other judicial

action, decision, or proclamation:

   a. Declaring that the Class Vehicles are defective;

   b. Declaring that Defendant's conduct violated the UCL;

   c. Declaring that Plaintiffs and the California Class are entitled to reimbursement or restitution for money spent on the Class Vehicles; and

   d. Enjoining Defendant from continuing to violate the UCL and, in accordance with Bus. & Prof. Code § 17203, enjoining Defendant to commence a corrective advertising campaign.

166.    Accordingly, Plaintiffs and the Class demand all available relief including attorney's fees and costs; all available equitable, restitution, and injunctive relief; and other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

167.    Plaintiffs allege, in the alternative to their other causes of action, that they lack an adequate remedy at law because monetary damages alone fail to make the Class Vehicles safe for continued operation.

168.    To do so, Plaintiffs require that the Defect be cured—and the cost of doing so, including parts and labor, potentially exceeds the amount of monetary damages suffered as a result of the diminution in value.

## THIRD CAUSE OF ACTION

### Violations of the Song-Beverly Consumer Warranty Act ("SBCWA")

### (Breach of Implied Warranty; Cal. Civ. Code §§ 1790, *et seq.*)

### (On Behalf of Plaintiffs and the California Class)

169.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

170.    Plaintiffs bring this cause of action against Defendant on behalf of themselves and the California Class for Violations of the SBCWA.

171. California Civil Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability. Defendant did not at any time properly disclaim the warranty.

172. The Class Vehicles are "consumer goods" as defined in California Civil Code § 1791(a).

173. Plaintiffs and the Class are "buyers" as defined in California Civil Code § 1791(b).

174. Defendant is the "manufacturer" of the Class Vehicles under California Civil Code § 1791(j).

175. Defendant impliedly warranted that the Class Vehicles, and particularly their E-Latch systems, were fit for the ordinary purposes for which they were used and without defect.

176. This warranty formed the basis of the bargain with regard to the Class members' purchase and lease of Class Vehicles.

177. Defendant knew, or at least should have known, that consumers expected the Class Vehicles to be secure and free from any defects, and as such, impliedly warranted to Plaintiffs and the Class that the Class Vehicles were "merchantable" under California Civil Code §§ 1791.1(a) and 1792.

178. The Class Vehicles were and are not merchantable, and as such, Defendant breached its implied warranty, because:

    a. The Class Vehicles do not have the quality that a buyer would reasonably expect due to the Defect;

    b. The Defect renders the Class Vehicles susceptible to the purchase of after-market power sources, lock outs, or even passengers getting trapped inside the vehicle;

    c. The Class Vehicles have a latent Defect that poses an unreasonable risk of manifesting and that in fact manifest in ways that pose a constant risk to safety and compromise reliability;

d. Defendant concealed the existence of the Defect; and

e. Defendant has refused and failed to provide the needed repairs and replacements to address and correct the Defect.

179.    Plaintiffs and the Class received the Class Vehicles in a condition that substantially diminishes their value, and which compromises the Class Vehicles' safety. As a result, Plaintiffs are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

180.    Defendant's breach of warranties proximately caused Plaintiffs and the Class, collectively, to suffer damages.

181.    Accordingly, Plaintiffs, individually and on behalf of the Class seeks all available monetary damages (including compensatory and/or liquidated damages and punitive damages); attorney's fees and costs; all available equitable, restitution, and injunctive relief; and all other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

## FOURTH CAUSE OF ACTION

### Common Law Fraudulent Concealment

### (On Behalf of Plaintiffs and the California Class)

182.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

183.    Plaintiffs bring this count against Defendant on behalf of themselves and the California Class for fraudulent concealment based on the particular misconduct alleged throughout this Complaint and elaborated upon below.

184.    **Duty.** Defendant had and continues to have a duty to disclose the existence, nature, and extent of the Defect because:

a. The safe and reliable operation and functionality of the Class Vehicles, including the E-Latch system, is imperative to keeping drivers and

passengers safe;

b. Defendant was in a superior position to know that the Defect existed as the designer, manufacturer, assembler, distributor, marketer, and warrantor of the Class Vehicles and Defendant remains in that position as to the vast majority of unwitting Class Members;

c. As Defendant knew, Plaintiffs and the Class lacked access to Defendant's proprietary and other non-public information, while information in the public domain was insufficient to alert a reasonably diligent consumer to the existence of the Defect, thus preventing Plaintiffs and the Class from knowing about the existence of the Defect or its manifestations during operation of the Class Vehicles;

d. Plaintiffs and the Class were not involved in the design or manufacture of the Class Vehicles, and as such could not be expected to learn or know about the existence and cause of the Defect;

e. Defendant knew that Plaintiffs and the Class lacked access to the design and manufacturing materials necessary to understand the existence and cause of the Defect; and,

f. Defendant knew that ordinary reasonable consumers would expect the Class Vehicles to be free of significant defects central to the function and safety of the vehicles such that the Defect would constitute a material fact in any purchasing or leasing decision, i.e., it would have influenced any and every reasonable consumer's purchasing or leasing decision, including whether and how much to pay to purchase or lease a vehicle.

185. **Concealment.** Defendant concealed the Defect by:

a. Knowingly selling and profiting from vehicles with the Defect while remaining silent as to Defect with the intent and purpose of ensuring that prospective customers would remain unaware of the Defect and

would purchase or lease the Class Vehicles without consideration of how the Defect affected the value of the Class Vehicles;

b. Purposefully withholding the existence of the Defect from dealerships, retailers, service facilities, and other businesses that sell, inspect, service, and maintain vehicles so that the public would remain ignorant of the Defect and continue to purchase the Class Vehicles;

c. Failing to recall the Class Vehicles or to otherwise alert the public to the existence, nature, and extent of the Defect; and

d. Failing to disclose the cause of various manifestations of the Defect when consumers experienced such problems, as alleged above.

186. **Causation.** Defendant's deceptive, misleading, unfair, unconscionable, and fraudulent acts and practices have directly and foreseeably caused damages to Plaintiffs and the Class, as alleged in this Complaint. In particular:

a. Defendant's intentional concealment of the Defect and Defendant's false, deceptive, misleading, and confusing representations and omissions would influence any ordinary, average, and reasonable consumer's decision whether to buy or purchase a Class Vehicle, given that the Defect pertains to the safety and security of the Class Vehicles. No reasonable consumer, including Plaintiffs, would have purchased or leased a Class Vehicle but for Defendant's acts, practices, omissions, and active concealment of the Defect, as described throughout this Complaint;

b. Any ordinary and objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices, including its concealment of the Defect; and

c. As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiffs and the Class have sustained economic injury at the time of purchase or lease as well as other economic losses alleged

above.

187.    Accordingly, Plaintiffs and the Class demand all available relief including all available compensatory and/or liquidated damages in an amount no less than the difference in value between what Plaintiffs and the Class reasonably believed they were paying for and the value of the vehicle they actually received; attorney's fees and costs; all available equitable, restitution, and injunctive relief; and other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

188.    Additionally, Defendant's intentional acts of deceit were carried out deliberately, maliciously, and wantonly, knowing full well—and therefore intending—that its deceit would cause economic harm to Plaintiff and the Class for its own aggrandizement. Defendant knew that its misconduct, including its concealment of the Defect, posing a safety risk to Plaintiffs and the Class; but it carried out its fraudulent scheme because doing so not only saved it money, but increased its profits and its market share. Defendant's reprehensible conduct thus warrants the imposition of punitive damages to punish it and to deter it and others from engaging in the same or similar schemes in the future.

## **Fifth CAUSE OF ACTION**
### **Common Law Unjust Enrichment**
### **(On Behalf of Plaintiffs and the California Class)**

189.    Plaintiffs reallege and incorporate herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

190.    Plaintiffs plead this unjust enrichment cause of action in the alternative to any contract-based claims.

191.    Plaintiffs brings this claim individually and on behalf of the California Class.

192.    The elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another.

193.    Plaintiffs and Class Members conferred non-gratuitous benefits upon Defendant by essentially paying more for Class Vehicles that were, upon information and belief, worth less than what was paid given the Defect.

194.    Plaintiffs and Class Members allege that Defendant owe them money for the conduct alleged herein.

195.    An undue advantage was taken from Plaintiffs' and Class Members' lack of knowledge of the deception, whereby money was extracted to which Defendant had no legal right. Defendant is therefore indebted to Plaintiffs and Class Members in a sum equal to the difference between what Plaintiffs and Class Members paid for their Class Vehicles and what the Class Vehicles were actually worth.

196.    Defendant is therefore indebted to Plaintiffs and Class Members in a sum certain for money had and received by Defendant, which Defendant in equity and good conscience should not retain.

197.    Defendant is therefore liable to Plaintiffs and Class Members in the amount unjustly enriched.

198.    Defendant's retention of any benefit collected directly and indirectly from Plaintiffs and Class Members violates principles of justice, equity, and good conscience. As a result, Defendant has been and continues to be unjustly enriched.

199.    Plaintiffs and Class Members are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiffs and Class Members the benefits it has unjustly obtained.

200.    Defendant accepted or retained such benefits with knowledge that the rights of Plaintiffs and Class Members were being violated for financial gain. Defendant has been unjustly enriched in retaining the revenues and profits from

Plaintiffs and Class Members, which retention under these circumstances is unjust and inequitable.

201.    As a direct and proximate result of Defendant's unlawful practices and retention of the monies paid by Plaintiffs and Class Members in excess of what was promised, Plaintiffs and Class Members have all suffered concrete harm and injury, including, but not limited to monetary loss in connection with their payments made to Defendant.

202.    Defendant's retention of the non-gratuitous benefits on it by Plaintiffs and Class Members would be unjust and inequitable.

203.    Plaintiffs and Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by this Court.

204.    Plaintiffs and Class Members request the Court enter an order awarding them restitution, rescission, and or/damages, and that they are entitled to recover their reasonable attorneys' fees.

205.    Plaintiffs and Class Members therefore also seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Civ. Proc. Code § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## PRAYER FOR RELIEF

Plaintiffs pray that judgment be entered against Defendant as follows, seeking equitable relief in the alternative to legal relief:

a.  That this action be certified as a class action;

b.  That Plaintiffs be appointed as the representative of the Class, as applicable;

c.  That Plaintiffs' attorneys listed below be appointed Class Counsel;

d.  For an order declaring Defendant's conduct to be unlawful;

e.  For an order compelling Defendant to make restitution to Plaintiffs and the Class in an amount to be proven at trial;

f.  For actual, compensatory, statutory and/or liquidated damages;

g.  For pre- and post-judgment interest at the legal rate;

h.  For injunctive and other equitable relief as alleged herein and as necessary to protect the interests of Plaintiffs and members of the Class, and to prohibit Defendant from engaging in the unlawful, unfair, deceptive and fraudulent acts described above, including public injunctive relief pursuant to Cal. Bus. & Prof. Code § 17204;

i.  For an order that Defendant engage in a corrective advertising campaign;

j.  For an order of restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the members of the Class as a result of its unlawful, unfair, and fraudulent business practices;

k.  For injunctive relief pursuant to California Code of Civil Procedure § 1780;

l.  For costs of this action and out-of-pocket expenses;

m.  For attorneys' fees, pursuant to, *inter alia*, Cal. Civ. Code § 1794(d); the common fund doctrine and/or Cal. Civ. Proc. Code § 1021.5; and

n.  For such other and further relief that the Court deems available and proper.

## <u>JURY DEMAND</u>

Plaintiffs, individually and on behalf of the Class, hereby demands a trial jury of all issues triable by right.

Dated: February 27, 2025

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ *Abbas Kazerounian, Esq.*
Abbas Kazerounian, Esq.
Pamela E. Prescott, Esq.
*Attorneys for Plaintiff*

**DIAB CHAMBERS LLP**
Edward S. Diab, Esq. (SBN: 262319)
ed@dcfirm.com
10089 Willow Creek Rd, Ste 200
San Diego, CA 92131
Telephone: (619) 350-6155